UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 08-145 (HHK)** |
| | : | |
| v | : | |
| | : | Motions: July 29, 2008 |
| **LARRY BRINSON-SCOTT** | : | |
| | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

The government relies upon the points and authorities set out in this memorandum and any supplemental matters as may be presented at a hearing on this matter.

Defendant's motion must be denied for any one of several reasons. First, the <u>defendant is without standing</u> because he had no reasonable expectation of privacy in the areas searched. The vehicle in question did not belong to the defendant, and the evidence that was recovered was found in the actual physical possession of another person in the automobile. The actual detention of defendant Brinson-Scott at the time – whether proper or improper – is incidental to the recovery of the evidence that provided a factual predicate for the search warrant issued three days later. Unless defendant can establish that he had a reasonable expectation of privacy in items hidden on the body of his brother at the time of the vehicle stop, defendant's motion is moot.

Second, even if the defendant could show a sufficient expectation of privacy, his motion must fail because the stop of the vehicle, and officers' actions after the stop were Constitutionally sound. The vehicle safety checkpoint was conducted for a proper purpose, and was conducted in a proper manner. When the driver was found to have neither a driver's license nor vehicle registration, officers appropriately asked the occupants to step out of the vehicle. The subsequent search of the defendant's brother, Mr. Cayol, because he consented to the pat down.

And last, the statements made by the defendant at the execution of the warrant were made at time when the defendant was in his own home and prior to his arrest or any custody equivalent to arrest. The statements are, therefore, fully admissible at trial, should the government choose to introduce them.

**I.    FACTS**

On March 30, 2008, the defendant was a passenger in a vehicle with his brother Jonathan Cayol, and one other person. The vehicle was stopped at a routine safety compliance checkpoint set up by the Metropolitan Police Department (MPD). The purpose of the checkpoint was to check for driver's licenses and vehicle registration. Every vehicle that drove past the checkpoint was stopped. At the stop, the driver was asked for his driver's license and registration; the driver had neither. All three individuals were asked to step out of the vehicle.

After they were out of the vehicle, one of the officers present asked the defendant's brother, Mr. Cayol, for consent to pat him down. Mr. Cayol consented, and in the subsequent pat down, the officer felt the distinctive shape of a handgun; the officer then recovered a .40 caliber Smith and Wesson semi-automatic handgun from Mr. Cayol's person. Mr. Cayol was subsequently arrested.

The defendant in the present case, Mr. Larry Brinson-Scott, was not charged with any offense related to that incident, and was released at the scene.

Three days later, an MPD investigating officer prepared an affidavit in support of a search warrant for Jonathan Cayol's apartment located at 3411 A Street, S.E, Apartment 203, Washington, D.C. The affidavit was based on the March 30, 2008 gun recovery from Mr. Cayol's person, and requested a search warrant seeking other firearms or firearms-related evidence. The warrant was properly signed and issued by judge of the District of Columbia Superior Court.

On April 10, 2008, the warrant was executed at the above-listed address. The defendant in the present case, Larry Brinson-Scott, was present at the apartment, which he admittedly shares with his brother, Mr. Cayol. Prior to the actual physical search, officers spoke with the defendant, who made several admissions regarding his use and access to particular locations in the apartment. In the subsequent search, officers found approximately 183 grams of cocaine base, approximately 67 grams of cocaine powder, 2 plastic plates with white powder residue, numerous small, unused ziplock bags, and $2512.00 in United States currency.

Defendant now complains that the evidence seized must be suppressed, alleging that the police search of his brother at the time of the March 30 auto stop somehow violated his Constitutionally-protected privacy interests. Defendant also complains that his statements made as he sat in a chair in his own home waiting for officers to execute a properly warranted search should be suppressed as the fruit of custodial interrogation. Because these arguments are supported by neither fact nor law, defendant's motion must be denied.

**II.     ARGUMENT**

### THE DEFENDANT HAS THE BURDEN OF DEMONSTRATING A LEGITIMATE EXPECTATION OF PRIVACY IN THE PROPERTY SEIZED OR THE PLACE SEARCHED

Fourth Amendment rights are personal rights which may be asserted only by a defendant who has a legitimate expectation of privacy in the invaded place or the thing searched. (*Rakas v. Illinois* 439 U.S. 128, 133-134, 143 (1978).) Thus, to succeed on a motion to exclude evidence based on a claim of unreasonable search and seizure, the defendant must first establish a personal, reasonable, and legitimate expectation of privacy in the particular area searched or thing seized. (*United States v. Payner* 447 U.S. 727, 731 (1980).) The defendant bears the

3

burden of showing a legitimate expectation of privacy. This burden requires the defendant to show two things. First, the defendant must hold an actual (subjective) expectation of personal privacy. Second, this expectation must be one that society is prepared to recognize as reasonable. In other words, the defendant's subjective expectation of privacy must be objectively reasonable under the circumstances. (*Smith v. Maryland* 442 U.S. 735, 740 (1979).)

The courts have specifically rejected several theories advanced to broaden the legitimate expectation of privacy of defendants whose personal rights have not been violated by police conduct. For example, mere presence at the search scene does not establish a defendant's legitimate expectation of privacy. (*Rakas v. Illinois*, *supra*, 439 U.S. at pp. 140-142; *Minnesota v. Carter* 525 U.S. 83 (1998).) Nor does the defendant gain an expectation of privacy simply because he or she is charged with possession of the property sought to be suppressed. (*United States v. Salvucci* 448 U.S. 83, 85 (1980).) Even the defendant's ownership of the property itself is insufficient to create a legitimate expectation of privacy. (*United States v. Salvucci*, *supra*.)

Being the "target" of an investigation does not create a legitimate expectation of privacy for a defendant. (*Rakas v. Illinois*, *supra*, at p. 135.) Nor does conspiring with, or being married to, one whose property is searched. (*United States v. Padilla* 508 U.S. 77 (1993) .) Even grossly unreasonable police conduct, as in secretly intercepting a briefcase belonging to a third party and copying its contents, cannot alter the defendant's need to show the conduct violated his or her personal, reasonable and legitimate expectation of privacy. (*United States v. Payner*, *supra*, 447 U.S. 727.)

As a mere passenger in the subject vehicle, the defendant in this case has no expectation of privacy in the vehicle. In the leading case of *Rakas v. Illinois* 439 U.S. 128 (1978) , police

stopped a vehicle driven by robbery suspects, searched their car, and found bullets in the glove compartment and a firearm under the front passenger seat. The Court held the passengers had no legitimate expectation of privacy in the car because they (1) neither owned nor leased the car, and (2) did not assert any interest (e.g., ownership) in the items seized. The Court wrote:

> Judged by the foregoing analysis, petitioners' claims must fail. They asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. And as we have previously indicated, the fact that they were "legitimately on [the] premises" in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched.

(*Id.* at p. 148.)

Similarly, in the present case, the defendant was merely a passenger in the vehicle at the March 30 traffic stop. Defendant has made no claim to a privacy interest in the vehicle or its contents; neither has he claimed an expectation of privacy in items that were in the exclusive physical possession of his brother, Mr. Cayol, at the time of the stop. The result is that this defendant is actually two steps removed from a reasonable expectation of privacy in the search he now challenges. First, he has no protected privacy interest in the automobile that was stopped at the checkpoint. Second, the defendant is equally a privacy interest in the search of his brother, who was neither in the car, nor otherwise detained at the time the officer found the handgun in a consensual pat down.

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." (*Alderman v. United States*, 394 U.S. 165, at pages 171-172 (1969).) Because no such rights of defendant Brinson-Scott were violated, his motion to suppress is without legal basis.

## THE MARCH 30, 2008 CHALLENGED VEHICLE STOP WAS LAWFUL

Recently, in *United States v. Bowman*, 496 F.3d 685 (D.C.Cir. 2007), the Court held that routine safety compliance checkpoints are permissible tools where the principle purpose is to regulate vehicular traffic by allowing police to check driver's licenses and vehicle registrations. In *Bowman*, the Court described the distinction between permissible traffic control checkpoints, and impermissible general crime control checkpoints saying:

> "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). As noted in *Edmond*, however, the Supreme Court has recognized "limited circumstances in which the usual rule does not apply." *Id.* With respect to roadblocks, the Court has "upheld brief, suspicionless seizures of motorists at a fixed Border Patrol checkpoint designed to intercept illegal aliens, and at a sobriety checkpoint aimed at removing drunk drivers from the road." Id. (*citations omitted*); see *Michigan Dep't. of State Police v. Sitz*, 496 U.S. 444, 455 (1990); *United States v. Martinez-Fuerte*, 428 U.S. 543, 566-67 (1976). "In addition," the Court has "suggested that a similar type of roadblock with the purpose of verifying drivers' licenses and vehicle registrations would be permissible." *Edmond*, 531 U.S. at 37-38 (*citing Delaware v. Prouse*, 440 U.S. 648, 663 (1979)); see also *Texas v. Brown*, 460 U.S. 730, 739 (1983). Taking the Court's suggestion, this circuit has twice held that a roadblock is constitutionally permissible where its principal purpose is " 'to regulate vehicular traffic by allowing police to check driver'[s] licenses and vehicle registrations.' " *Davis*, 270 F.3d at 980 (quoting *United States v. McFayden*, 865 F.2d 1306, 1312 (D.C.Cir.1989)). Where, however, "the 'primary purpose' of a roadblock is general crime control" or the " 'interdiction of illegal narcotics' "– as in Edmond – "it is unconstitutional." Id. at 979 (quoting *Edmond*, 531 U.S. at 38, 41, 42, 44, 46, 47, 48).

*Id.* at 691-692.

In *Bowman*, the Court reiterated the three-part test previously established in *United States v. McFayden*, supra, to determine when such stops are permissible. The test from *McFayden* requires that for such checkpoints to be Constitutionally permissible, (1) the principal purpose of such checkpoints must be vehicular regulation, (2) the checkpoints must serve to promote that purpose in a 'sufficiently productive' fashion, and (3) the checkpoints must be minimally intrusive:

6

(a) they must be clearly visible; (b) they must be part of some systematic procedure that strictly limits the discretionary authority of police officers; and (c) they must detain drivers no longer than is reasonably necessary to accomplish the purpose of checking a license and registration, unless other facts come to light creating a reasonable suspicion of criminal activity."  (*Id.* at 1312.)

Here, the Metropolitan Police Department was conducting a routine Traffic Safety Compliance Checkpoint.  When the vehicle in which the defendant and his brother were passengers was stopped, officers at the checkpoint did exactly what they are permitted to do: they asked the driver for his license and registration.  When the driver was found to have neither, the officers at the checkpoint properly detained the driver, and asked the passengers (defendant Brinson-Scott and his brother Cayol) to step out of the vehicle.

## THE CONSENT SEARCH OF CAYOL AT THE MARCH 30 TRAFFIC STOP WAS PROPER

Voluntary consent to search permits an officer to search without a warrant and establishes the reasonable nature of the search.  Consent to search is not a waiver of one's constitutional rights. (*Schneckloth v. Bustamonte* 412 U.S. 218, 243-246 (1973).)  Therefore, the Fourth Amendment does not require that a defendant be advised of *Miranda* rights, or of the right to refuse permission.  While the absence of such warnings, or the fact that a defendant is in custody, may be taken into consideration, they do not establish that a consent was not voluntarily given.  (*Schneckloth v. Bustamonte*, *supra*, at p. 246-249.)  Similarly, the defendant need not be told that a detention has ended and he or she is free to go before a post-detention consent may be deemed voluntary.  (*Ohio v. Robinette* 519 U.S. 33 (1996).)

Consent to search must be voluntary and freely given rather than a mere submission to express or implied authority, duress or coercion.  Voluntariness is a question of fact to be resolved

7

by considering all the surrounding circumstances. (*Schneckloth v. Bustamonte*, *supra*, 412 U.S. at pp. 248-249.)

During the March 30, 2008 vehicle stop, after the driver was detained for no license and/or registration, the defendant and his brother were asked to step out of the vehicle. At that time, an officer asked Mr. Cayol for permission to conduct a pat down. Mr. Cayol was not detained at that time, nor was he subjected to any particular duress beyond the circumstance of being a passenger in a vehicle that was now subject to impoundment. Under the circumstances, the officer had every right to ask for consent to conduct a pat down, and when given consent, he had every right to conduct the pat down. The rest, as they say, is history.

## DEFENDANT'S STATEMENTS MAY NOT BE SUPPRESSED BECAUSE HE WAS NOT IN CUSTODY

When officers went to the defendant's apartment to execute the search warrant that gives rise to this case, they made contact with the defendant, served him with the warrant and detained him in the living room during the execution of the warrant. During this time, officers asked him which room was his and the defendant nodded his head toward the bedroom to his left, then hesitated for a moment and told the officers the bedroom on the right. Later, but still before the defendant was made aware that no narcotics had been recovered, an officer again asked him which room was his. The defendant nodded his head toward the bedroom to his right and said, "I stay there." He then nodded his head toward the bedroom to his left and said, "I keep my stuff there."

Custodial interrogation has long been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).)

In *Oregon v. Mathiason*, 429 U.S. 492 (1977) the Court held:

> "[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited."

(Id. at p. 495.)

When determining whether a suspect is in custody for purposes of *Miranda*, the court must take into account all of the circumstances surrounding the questioning. "[T]he ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (*California v. Beheler*, 463 U.S. 1121, 1125 (1983); see also *Stansbury v. California*, 511 U.S. 318, 322 (1994).)

The test is entirely objective. Whether a person is in custody depends on the objective circumstances of the interrogation rather than on the subjective view of either party. (*Stansbury v. California*, supra, at p. 323.) "Where no formal arrest takes place, the relevant inquiry . . . ' is how a reasonable man in the suspect's position would have understood his situation.' " *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984).)

In this case, the defendant, although handcuffed, was sitting in his own chair, in his own living room, in his own home. He had been served the search warrant, so he knew that the purpose of the police presence was focused on the premises rather than on him personally. He also knew that his detention was for security during the search, a decidedly different matter than a custodial arrest. Furthermore, the officers asked only a few cursory questions about where he stayed in the apartment, and simply went about their work in conducting the search; thus, until the search was completed, the police presence was focused entirely on the execution of the search warrant. Therefore, because the defendant's detention was decidedly less than the equivalent of a custodial arrest necessary to trigger the strictures of *Miranda*, this Court must deny the present motion to suppress the defendant's statements.

WHEREFORE, the government respectfully requests that the Court deny defendant's motion.

        Respectfully submitted,

        JEFFERY A. TAYLOR
        United States Attorney

        /s/ William L. Woodruff
        WILLIAM L. WOODRUFF
        Assistant United States Attorney
        Federal Major Crimes Section
        DC Bar number: 481-039
        555 4th Street, N.W.  #4840
        Washington, DC 20530
        (202) 307-6080; Fax: 353-9414
        William.Woodruff2@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 08-145 (HHK)** |
| | : | |
| v | : | |
| | : | Motions: July 29, 2008 |
| **LARRY BRINSON-SCOTT** | : | |
| | : | |

### ORDER

Upon consideration of the Defendant's Motion to Suppress Tangible Evidence and Statements, and the United States Opposition thereto, and the record herein, it is this _____ day of _____, 2008, hereby

ORDERED, that defendant's motion be denied.

_____
UNITED STATES DISTRICT JUDGE